IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RAYMOND FITZGERALD and DAVID T. CUMMING individuals,<br><br>Plaintiffs,<br><br><br><br>vs.<br><br><br>U.S. BANK, N.A.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br><br><br>Case No. 2:12-CV-1113 TS |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiffs' Claims.[1]

For the reasons set forth below, the Court will grant the Motion.

## I.  MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be

granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from

conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

---

[1]Docket No. 14.

1

the nonmoving party.[2]  Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[7]

When considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7] *Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8]  Thus, "notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, '[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"[9]

In this case, Plaintiffs argue that certain loan documents attached to Defendant's Motion are outside of the pleadings and therefore should not be considered by the Court.  However, as the documents are referenced in the Complaint,[10] are central to Plaintiffs' claims, and are not disputed as to authenticity, the Court will consider the documents in deciding the Motion to Dismiss.

As Plaintiffs are proceeding *pro se*, the Court will construe Plaintiffs' pleadings liberally and hold their submissions to a less stringent standard than formal pleadings drafted by lawyers.[11] This means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his

---

[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)).

[9] *Alvarado v. KOBTV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[10] Docket No. 2-2, at 7, 8.

[11] *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

unfamiliarity with pleading requirements." [12]  No special legal training is required to recount facts surrounding an alleged injury, and *pro se* litigants must allege sufficient facts, on which a recognized legal claim could be based.[13]

## II.  BACKGROUND

The following facts are taken from Plaintiffs' Complaint and the documents referenced therein.  The facts are viewed in the light most favorable to Plaintiffs and are accepted as true for the purposes of Defendant's Motion.

Plaintiff David T. Cumming is a managing member of Thorpe/Murray 3949 LLC ("Borrower").  Plaintiff Raymond Fitzgerald is a managing member of the Dalsnan Family LLC ("Dalsnan"), and Dalsnan is a managing member of Borrower.

On May 16, 2011, Borrower executed a Term Note (the "Note") by which it borrowed $2,500,000.00 from the Bank (the "Loan").  Also on May 16, 2011, Borrower secured its obligations under the Note by executing a document titled "Utah Deed of Trust, Security Agreement and Assignment of Rents and Leases (Including Fixture Filing Under Uniform Commercial Code)" (the "Trust Deed").[14]  Borrower further secured its obligations under the Note by way of a Continuing Guaranty executed by Plaintiff Cumming, and a separate but identical Continuing Guaranty executed by Plaintiff Fitzgerald (collectively, the "Guaranties"). The Guaranties were also executed on May 16, 2011.

---

[12]*Id.*

[13]*Id.*

[14]Docket No. 14-2, at 2.

By executing the Guaranties, Plaintiffs "absolutely and unconditionally jointly and severally" guaranteed "prompt payment" of "the Obligations" of Borrower.[15]  "Obligations" is defined as "all loans, drafts, overdrafts, checks, notes and all other debts, liabilities and obligations of every kind owing by the Borrower to the Bank, whether direct or indirect, absolute or contingent, liquidated or unliquidated[,] whether of the same or a different nature and whether existing now or in the future . . . ."[16]

Section 4 of the Guaranties states:

The Guarantor agrees to provide to the Bank from time to time upon request any information regarding the Guarantor's financial condition which the Bank reasonably requests; and without request, the Guarantor will provide annual financial statements in form and content satisfactory to the Bank within 60 days of the end of each year.[17]

Plaintiffs readily acknowledge that they "refused or failed to provide information requested by Defendant US Bank regarding their financial condition as required by Section 4 of the Guarant[ies]."[18]

Section 8 of the Guaranties states: "If the Guarantor shall . . . fail to comply with the terms of the Guaranty . . . the Guarantor's liability hereunder to pay the Obligations shall become

---

[15]Docket No. 14-3, at 2; Docket No. 14-6, at 2.

[16]Docket No. 14-3, at 2; Docket No. 14-6, at 2.

[17]Docket No. 14-3, at 2; Docket No. 14-6, at 2.

[18]Docket No. 2-2, at 5.

immediately due and payable whether or not the Obligations are then due and payable by the Borrower or any other guarantor."[19]

  The Note provides that Borrower's obligations under the Note are governed by a Term Loan Agreement ("Loan Agreement"), which the Borrower and Plaintiffs executed on May 16, 2011, together with the Note, Deed of Trust, and Guaranties.  Together with the Loan Agreement, these documents are referred to collectively as the "Loan Documents."

  The Loan Agreement provides that if the "Borrower or any guarantor of Borrower's obligations to the Bank ("Guarantor") shall fail to perform or observe any agreement, term, provision, condition, or covenant . . . required to be performed or observed by the Borrower or any Guarantor hereunder or under any other Loan Document," such a failure "will constitute a default" of the Borrower under the Loan Agreement.[20]  Section 1.6 of the Loan Agreement defines "Loan Documents" to include, in part, "the documents specified in Article III" of the Loan Agreement; Article III of the Loan Agreement provides that the Loan Agreement and Note are guarantied by the Guaranties, along with a separate guaranty executed by Dalsnan.

  Section 4.3 of the Loan Agreement provides that "[u]pon the occurrence" of a default "the Bank may at any time thereafter, by written notice to the Borrower, declare the unpaid principal balance of any Obligations, together with the interest accrued thereon and other amounts accrued hereunder and under the other Loan Documents, to be immediately due and

---

[19]Docket No. 14-3, at 3; Docket No. 14-6, at 3.

[20]Docket No. 14-5, at 5.

payable . . . ."[21]  Section 4.4 of the Loan Agreement provides that "[n]othing in this Article IV is intended to restrict the Bank's rights under any of the Loan Documents or at law, and the Bank may exercise all such rights and remedies as and when they are available."[22]  Section 6.2 of the Loan Agreement provides that "[i]n the event of any inconsistencies in any of the terms in the Loan Documents, all terms will be cumulative so as to give the Bank the most favorable rights set forth in the conflicting documents . . . ."[23]

The Note provides that "[t]here shall be no prepayments of this Note," but that the Bank may consider requests to prepay, and also that "the Borrower shall be required to pay the Bank, upon prepayment of all or part of the principal amount before final maturity, a prepayment indemnity . . . ."[24]

Following a meeting with the Bank on May 11, 2012, Plaintiff Cumming requested that Defendant US Bank "provide him with a statement as to the outstanding amount of the loan from" the Bank to Borrower.[25]  Later that day, Lizabeth Miller of the Bank sent Plaintiffs an email in which she expressed regret that the meeting "didn't produce a solution to your past issues with US Bank," mentioned that the Bank is "disappointed to see Plaintiffs go," and

---

[21]Docket No. 14-5, at 5.

[22]*Id.*

[23]*Id.* at 6.

[24]Docket No. 14-1, at 2.

[25]Docket No. 2-2, at 7.

provided payoff information for the Loan, including a "Pre-Payment Indemnity."[26]  Plaintiff

Cumming responded to the email that same day, arguing that though he was obligated to repay

the Loan, that obligation did not include the Prepayment Fee.  The email also included a request

for "an interest per diem."[27]

The Bank's response later that day did not directly address Cumming's argument that he

was not required to pay a prepayment indemnity.  Instead, the email stated only that "I've

attached a pay off statement as of today.  The per diem rate of $372.17590 is listed at the top of

the page.  Please let me know if you need any other information."[28]  The payoff statement

included the per diem rate, the principal balance, interest balance, total balance, and the words

"PREPAYMENT INDEMNITY," but did not state an amount for a prepayment indemnity.

Plaintiffs allege that, in reliance on the pay off statement, they sought and obtained

financing to honor their liability under the Guaranties.  Then, on August 9, 2012, Defendant

> unilaterally sought to rescind its statement that the amount that Plaintiffs . . . owed
> was only the outstanding principal amount of, and the interest due on, the loan
> from Defendant . . . to Thorpe/Murray and, instead, claimed that the amount due
> to Defendant US Bank included not only the principal and interest but also an
> additional $109,961.63 variously described by Defendant . . . as a "Managerial
> (Cost Center) Charge" and a "Contractual (Customer) Charge."[29]

---

[26]Docket No. 14-7, at 3.

[27]*Id.*

[28]*Id.* at 2.

[29]*Id.*

III.  DISCUSSION

Plaintiffs bring the following claims: (1) Breach of Contract—Declaratory and Injunctive Relief; (2) Breach of Contract—Damages; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Tortious Breach of Contract; and (5) Estoppel—Declaratory and Injunctive Relief.[30]

A.      BREACH OF CONTRACT CLAIMS

Plaintiffs' breach of contract claims are grounded in their contention that Section 8 of the Guaranties requires that Plaintiffs' Obligations necessarily become due and payable at the time Plaintiffs failed to comply with a term of the Guaranties, free of any fees other than the principal and interest due on the Loan.  Defendant disputes this interpretation, arguing that Section 8 simply provides the Bank with the permissive remedy of accelerating Plaintiffs' Obligations. The Court will therefore begins its analysis by interpreting Section 8.

When interpreting a contract, the Court looks "to the writing itself to ascertain the parties' intentions," considering each contract provision "in relation to all of the others, with a view toward giving effect to all and ignoring none."[31]  "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."[32]  "An ambiguity exists in a contract term or provision 'if it is capable of more than one reasonable interpretation

---

[30]Docket No. 2-2, at 8–11.

[31]*WeBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1144 (Utah 2002) (quoting *Jones v. ERA Brokers Consol.*, 6 P.3d 1129, 1131 (Utah 2000)).

[32]*Id.* (quoting *Cent. Fla. Invests., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002)).

9

because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'"[33]  Further, "when two agreements are executed substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized if possible."[34]

As a preliminary matter, the Court notes that the Guaranties and the Loan Documents must be construed together.  First, the Guaranties and the other Loan Documents were all executed contemporaneously on May 16, 2011.  Second, the documents are clearly interrelated as the Guaranties expressly reference the Loan Documents: "This Guaranty, the collateral documents securing the Guaranty and the documents evidencing the Obligations contain the entire agreement of the parties regarding this matter . . . ."[35]  Similarly, Article III of the Loan Agreement provides that the Loan Agreement and Note are guarantied by the Guaranties.

Viewing the Guaranties and the other Loan Documents as a whole, the Court finds that Section 8 of the Guaranties unambiguously provides Defendant with a permissive, not mandatory, remedy that it can pursue at its election.  As Plaintiffs point out, Section 8 uses the mandatory "shall" when stating that if Plaintiffs fail to comply with the terms of the Guaranties, their liability "shall become immediately due and payable."[36]  But Plaintiffs' assertion that this language requires the Bank to allow them to prepay their obligations contradicts the terms of the

---

[33]*Id.* (quoting *SME Indus., Inc. v. Thompson, Ventulett, Stainback, and Assocs., Inc.*, 28 P.3d 669, 675 (Utah 2001)).

[34]*Tretheway v. Furstenau*, 40 P.3d 649, 652 (Utah 2001) (citation and internal quotation marks omitted).

[35]Docket No. 14-3, at 3; Docket No. 14-6, at 3.

[36]Docket No. 14-3, at 3; Docket No. 14-6, at 3.

Note, which states that "[t]here shall be no prepayments of this Note, provided that the Bank *may* consider requests for its consent with respect to prepayment of this Note, without incurring an obligation to do so . . . ."[37]  Plaintiffs' interpretation of Section 8's is also called into question by the language of the Loan Agreement, which states that "[u]pon the occurrence" of a default "the Bank *may* at any time thereafter, by written notice to the Borrower, declare the unpaid principal balance of any Obligations, together with the interest accrued thereon and other amounts accrued hereunder and under the other Loan Documents, to be immediately due and payable . . . ."[38]

The apparent inconsistency between Section 8's mandatory "shall" and the Loan Documents' permissive "may," is reconciled by interpreting the word "shall" as removing Plaintiffs' discretion as to the timing of payments while granting Defendant an immediate, but non-mandatory remedy.  This interpretation is consistent both with the Loan Documents, which provide that "[i]n the event of any inconsistencies in any of the terms in the Loan Documents, all terms will be cumulative so as to give the Bank the most favorable rights set forth in the conflicting documents," and with Utah law, which provides that "[g]uaranties are meant to protect the creditor."[39]  It is also consistent with Section 8 itself, which states that the Guaranties "shall inure to the benefit of the Bank."[40]

---

[37]Docket No. 14-1, at 2 (emphasis added).

[38]Docket No. 14-5, at 5 (emphasis added).

[39]*Machock v. Fink*, 137 P.3d 779, 784 (Utah 2006).

[40]Docket No. 14-3, at 3; Docket No. 14-6, at 3.

11

Under Plaintiffs' interpretation, a guarantor could avoid prepayment penalties by manufacturing a default, thereby requiring the creditor to pursue just one remedy—acceleration of the debt—to the exclusion of all others.  The Court is persuaded that the parties did not intend such an anomalous result.[41]

1.    *Breach of Contract—Declaratory and Injunctive Relief*

Having interpreted Section 8 of the Guaranties, the Court now turns to Plaintiffs' breach of contract claims.  Plaintiffs first argue that they are entitled to a declaratory judgment that, under the Guaranties, they are not required to pay Defendant anything more than the principal and interest due on the Loan.  This argument stems from Plaintiffs' belief that Section 8 compels Defendant to accelerate Plaintiffs' Obligations as of the time of Plaintiffs' failure to comply with the Guaranties.  According to this argument, because the Borrower had not requested a prepayment as of that date, no prepayment penalty would be included in the Obligations.

As discussed above, Section 8 does not require Defendant to accelerate the Obligations, it merely allows it.  Accordingly, to the extent Plaintiffs seek to prepay their Obligations, the Bank is free to impose a prepayment penalty pursuant to the terms of the Loan Documents.  As guarantors of Borrower's obligations, Plaintiffs are responsible for any such fee the Bank contractually imposes.  Accordingly, Plaintiffs' claim for declaratory judgment that they owe nothing more than principal and interest must be dismissed.

---

[41]*See W. Pinal Family Health Care Ctr., Inc. v. McBryde*, 785 P.2d 66, 70 (Ariz. Ct. App. 1989) (stating that the choice of remedies belongs to the non-breaching, as opposed to the breaching, party).

2.      *Breach of Contract—Damages*

Plaintiffs next claim that Defendant breached the Guaranties by requiring Plaintiffs to pay an amount beyond the principal and interest due on the Loan.  As discussed, Plaintiffs' contract requires them to pay a prepayment indemnity in the event they obtain the Bank's consent to prepay the Loan.  Accordingly, Plaintiffs' breach of contract claim also fails and must be dismissed.

3.      *Breach of Implied Covenant of Good Faith and Fair Dealing*

As a general rule, "every contract is subject to an implied covenant of good faith."[42] "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract."[43]

Plaintiffs claim that Defendant breached the implied covenant of good faith and fair dealing by insisting on the payment of fees in addition to the principal and interest due on the Loan.  As the guarantors of Borrower's Loan, Plaintiffs are responsible for any prepayment penalty that the Bank may contractually require.  Thus, Defendant has not breached the covenant of good faith and fair dealing by requiring the payment of an amount in excess of  the Loan's principal and interest.

---

[42]*Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991).

[43]*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2 194, 199 (Utah 1991) (citing *Bastian v. Cedar Hills Inv. & Land Co.*, 623 P.2d 818, 821 (Utah 1981); *Ferris v. Jennings*, 595 P.2d 857 (Utah 1979)).

Plaintiffs also argue that Defendant has breached the covenant of good faith and fair dealing by requiring Plaintiffs to pay a "Managerial (Cost Center) Charge" or a "Contractual (Customer) Charge" of $109,961.63, which is not supported by the Loan Documents.  But, as Plaintiffs admit, to the extent Defendant ever asserted such a claim, it has now abandoned it. Thus, all that remains of this argument is Plaintiffs' claim that they are not required to pay any amount above the Loan's principal and interest.   As has been discussed, this is not the case. Plaintiffs' claim for breach of the covenant of good faith and fair dealing, therefore, must be dismissed.

### 4.    *Tortious Breach of Contract*

As Defendant is not liable for a breach of contract, it also is not liable for a tortious breach of contract.  Accordingly, this claim will be dismissed.

### B.    ESTOPPEL

Plaintiffs' fourth and fifth claims are for estoppel.  Specifically, Plaintiffs argue that they understood Defendant's "formal 'pay off statement,'"[44] to be a promise not to require Plaintiffs to pay a prepayment fee, and Defendant should be estopped from claiming otherwise.

Under Utah law, the elements of promissory estoppel are:

(1) The promisee acted with prudence and in reasonable reliance on a promise made by the promisor; (2) the promisor knew that the promisee had relied on the promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person; (3) the promisor was

---

[44]Docket No. 15, at 14.

aware of all material facts; and (4) the promisee relied on the promise and the reliance resulted in a loss to the promisee.[45]

Further, "the alleged promise must be reasonably certain and definite, and a claimant's subjective understanding of the promissor's statement cannot, without more, support a promissory estoppel claim."[46]

Here, Plaintiffs argue that they understood Defendant's "formal 'pay off statement,'" to be a promise not to require Plaintiffs to pay a prepayment fee.[47]  The Bank's May 11, 2012, email provides "current pay-off information" for the Loan, and includes principal, interest, and the "Pre-Payment Indemnity" in the amount of $161,176.59.[48]  Plaintiffs responded by email that same day, arguing that they owed no prepayment fee and stating that "an interest per diem would be useful."[49]  The Bank responded with another email, attaching a payoff statement which included the "per diem rate" requested by Plaintiffs.  The statement attached to the email mentions a "PREPAYMENT INDEMNITY," but does not reflect an amount associated with it.[50]

Plaintiffs' estoppel claims rely entirely on the second email from the Bank, but ignore the existence of the first email and the Loan Documents themselves, both of which require a

---

[45]*Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1020–21 (10th Cir. 2002) (quoting *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100, 1107 (Utah 2000)).

[46]*Nunley v. Westates Casing Servs., Inc.* 989 P.2d 1077, 1089 (Utah 1999).

[47]Docket No. 15, at 14.

[48]Docket No. 14-7, at 3.

[49]*Id.*, at 2.

[50]Docket No. 14-8, at 2.

prepayment fee.  Plaintiffs argue that the May 11, 2012, statement is the "statement" upon which they relied for purposes of their estoppel claim.  However, the payoff statement is not "reasonably certain and definite," and cannot be thought of as a promise intended to induce reliance.  Moreover, even if Plaintiffs' reliance were reasonable, Plaintiffs' estoppel claims would still fail because Plaintiffs fail to allege that Defendant knew Plaintiffs had relied on the promise or that Defendant was aware of the material facts.  The Court will therefore dismiss these claims.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss Plaintiffs' Claims (Docket No. 14) is GRANTED.  It is further

ORDERED that the hearing set in this case for April 9, 2013, is STRICKEN.

The Clerk of the Court is directed to close this case forthwith.

DATED   April 4, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge